UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT LEE CURRY,

     Petitioner,     Case No. 1:17-cv-64

v.             Honorable Paul L. Maloney

JEFFREY WOODS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

   This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Lee Curry is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee County, Michigan.  Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of three counts of armed robbery; one count of assault with intent to rob while armed; one count of felon in possession of a firearm (FIP); one count of carrying a concealed weapon (CCW); and four counts of felony firearm.  On February 3, 2014, the court sentenced Petitioner as a fourth habitual offender to concurrent prison terms of 35 to 60 years on the armed robbery and assault convictions, and 5 to 10 years on the FIP and CCW convictions.  All of those sentences were to be served consecutively to 2-year term of imprisonment for the felony firearm convictions.  Petitioner's sentences for the convictions in the Kalamazoo County prosecution were to be served consecutively to a sentence of 1 year, 6 months to 4 years imposed by the Allegan County Circuit Court on May 6, 2011.  Petitioner was on parole for the Allegan County offense when he committed the crimes in Kalamazoo County.

On January 12, 2017, Petitioner timely filed his habeas corpus petition raising seven grounds for relief, as follows:

I.    Petitioner was denied due process of law where the judge permitted a complaining witness to testify that he'd heard someone say that Petitioner had robbed before.

II.   Petitioner was denied a fair trial when, over defense objection, the detective in charge of the investigation was allowed to state her opinion that, in a conversation the detective overheard, Petitioner was "obviously coaching" his wife to testify about a subject of which, it seemed to the detective, Petitioner's wife was unfamiliar.

III.  Petitioner's trial counsel rendered ineffective assistance when:

A.    counsel failed to object or move to suppress Officer Gates' testimony regarding an incriminating statement made by Petitioner;

B.    counsel failed to get the audio of Petitioner's call to 911;

C.    counsel failed to send Petitioner's phone records to a lab to confirm Petitioner's truthfulness through text messages;

D.    counsel failed to subpoena witness Ms. Jones to support Petitioner's duress defense; and

E.    counsel failed to qualify Petitioner's treating mental health professional as an expert.

IV.   The trial court denied Petitioner's right to confront the witnesses against him when the court did not compel the testimony of victim Scott Smith.

V.    The trial court improperly excluded testimony from witness Officer Gates that would have supported Petitioner's defense of duress.

VI.   The photo lineup was improper.

VII.  The trial judge improperly excluded testimony of Petitioner treating mental health professional that would have supported Petitioner's duress defense.

VIII. Officer Gates violated Petitioner's *Miranda* rights during jailhouse interrogation and the testimony regarding the interrogation should have been excluded.

IX.   Petitioner's race was underrepresented in the jury venire and the trial judge improperly dismissed one of only two black jurors.

2

(Pet., ECF No. 1-1, PageID.41, 70-80.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they are procedurally defaulted and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

On March 8, 2013, Petitioner, while armed, robbed Christopher Tucker, Cody Tucker, and Scott Smith.  At the same time, he assaulted Jordan Wallace with an intent to rob her.  Petitioner's conduct in committing those offenses also violated Michigan statutes prohibiting the carrying of a concealed weapon, the possession of a weapon by a felon, and the possession of a firearm in connection with the commission of a felony.  Although there were some differences between the accounts of the event offered by the victims and the account offered by Petitioner, Petitioner did not deny committing the offenses.  He claimed he committed the offenses under duress.  Armed associates had threatened Petitioner's wife and children if he did not commit the offenses.  Indeed, according to Petitioner and his wife, one gunman sat with Petitioner's wife and children at the home where they were residing while Petitioner committed the crimes.

After listening to several days of testimony, the jury was not convinced that Petitioner acted under duress.  The jurors deliberated for about an hour before returning their verdict of guilty on all counts.

Petitioner, with the assistance of counsel, directly appealed his convictions.  Petitioner and his counsel sought a remand to the trial court to permit factual development of an ineffective assistance claim regarding trial counsel's failure to call witnesses to support Petitioner's duress defense.  (Pet'r's Mot. to Remand, ECF No. 11-9, PageID.1538-1542.)  The

court of appeals denied Petitioner's motion by order entered September 5, 2014.  (Mich. Ct. App. Order, ECF No. 11-9, PageID.1552.)

Petitioner, through his counsel, submitted an appeal brief raising two issues, the issues identified as habeas issues I and II above.  (Pet'r's Br., ECF No. 11-9, PageID.1555-1582.) In a *pro per* brief, Petitioner raised the issues identified as habeas issues III-IX above.  (Pet'r's Standard 4 Br., ECF No. 11-9, PageID.1600-1617.)  By unpublished opinion issued June 11, 2015, the Michigan Court of Appeals considered each of Petitioner's issues and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 11-9, PageID.1514-1521.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-10, PageID.1619-1693.)  By order entered February 6, 2016, the supreme court denied leave to appeal because it was unpersuaded that the questions presented should be reviewed.  (Mich. Order, ECF No. 11-10, PageID.1618.)  This timely petition followed.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Improper admission of evidence (habeas issues I and II)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496,

512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

### A.    Hearsay/bad acts evidence

When Petitioner lured his victims in with a Craigslist ad, he called himself "Mark." (Trial Tr. I, ECF No. 11-3, PageID.494; Trial Tr. II, ECF No. 11-4, PageID.572.) Yet, when Christopher Tucker spoke with the 911 operator, he told the operator he did not know the name of the person who robbed him. (Trial Tr. II, ECF No. 11-4, PageID.572-573.) Mr. Tucker indicated he had simply forgotten that detail when he spoke with the dispatcher. (*Id*.) On redirect, the prosecutor asked whether Mr. Tucker even believed "Mark" to be Petitioner's name. (*Id*., PageID.597.) Mr. Tucker indicated that he did not because, when the victims returned to the apartment complex with the police, a complex resident had told him . . .; at that point, defense counsel objected to the expected response as hearsay. (*Id*., PageID.597-598.) The prosecutor argued that the resident's statement was not offered for the truth of the matter asserted, but to explain why Mr. Tucker may have not provided the name "Mark" to the dispatcher. (*Id*.) The Court allowed the testimony, concluding that the testimony was not being offered for the truth of the matter asserted, but to explain why Mr. Tucker had not identified the robber as "Mark." (*Id*., PageID598.) The Court so instructed the jury. (*Id*.)

When Mr. Tucker responded, he said the complex resident told him "His name's Rob. . . . He robbed me, you know, three years ago[.]"  (*Id*., PageID.599.)  Petitioners' counsel then approached the bench to request a mistrial because the statement that Petitioner robbed another three years before was highly prejudicial to Petitioner.  (*Id*., PageID.600.)  The trial court denied that request, choosing instead to provide a limiting instruction.  The court instructed the jury "you're not to consider [the statement] for any potential truth of the statement being made regarding anything that happened or who the person was.  So I do instruct you you should not consider it for any purpose other than trying to understand this witness's state of mind as he was doing and describing things to others."  (*Id*., PageID.601.)

Petitioner contends the evidence should not have been admitted for two reasons: first, the testimony is inadmissible hearsay under the Michigan Rule of Evidence 802; and second, because the testimony introduces a prior bad act by Petitioner in violation of Michigan Rule of Evidence 404.  The trial court concluded that the testimony was not hearsay under the Michigan Rules of Evidence because it was not offered for the truth of the matter asserted.  The trial court never considered the admissibility of the testimony under Rule 404, because the prosecutor never presented it for admission under that rule.  Instead, the court considered the prejudicial effect of the testimony in the context of the motion for mistrial and concluded that any prejudice could be ameliorated with an instruction.  The Michigan Court of Appeals rejected the entirety of Petitioner's challenge, the hearsay aspect and the "prior bad act" aspect, by affirming the trial court's determination that any prejudice was addressed by the court's curative instruction.

It is the appellate court's determination that Petitioner did not suffer prejudice— that any error was harmless—to which this Court must defer on habeas review.  "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may

grant habeas relief only where those determinations are objectively unreasonable. *O'Neal v. Balcarcel*, 933 F.3d 618. 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).  In Petitioner's case, the court of appeals concluded Petitioner did not suffer prejudice "[b]ecause the jury was instructed that it could not consider the residents' statements that Christopher heard for their truth, and because a jury is presumed to follow its instructions . . . ." (Mich. Ct. App. Op., ECF No. 11-9, PageID.1515-1516.)

It is clearly established federal law that "[a] jury is presumed to follow its instructions." *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Therefore, the Michigan Court of Appeals conclusion that the same presumption under state law forecloses a finding of prejudice is not objectively unreasonable.   Certainly, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## B.    Lay opinion testimony

Petitioner's claim of duress depended on the corroborating testimony of his wife. The prosecutor attempted to cast doubt upon the corroborating effect of Petitioner's wife's testimony by referring to a phone conversation between Petitioner and his wife during Petitioner's pretrial detention:

| | |
|---|---|
| [Prosecutor] Q: | Do you recall a phone conversation that you and Ashley Jones had on this last Friday, the 15th of November? |
| [Petitioner's counsel]: | Your Honor, I'm gonna object and ask to approach the bench. |
| THE COURT: | You may. |

(At 4:51 p.m., bench conference begins between the Court and counsel)

9

| | |
|---|---|
| [Petitioner's counsel]: | Your Honor, this is tying testimony to introduce--(inaudible--Ms. Camfield-Kuiper speaking in a lowered voice)--call I've never asked him about. I never asked him what--if he directed Ashley to testify to. I never--I never asked Ashley about a phone conversation. I think this is highly irrelevant. I think it's improper to question. I think it's outside of direct. |
| THE COURT: | The objection's overruled. |
| [Prosecutor]: | Thank you. |
| (At 4:51 p.m., bench conference ends) | |
| [Prosecutor]: | Do you recall a phone conversation you had with Ashley Jones this past Friday, November 15th? |
| [Petitioner]: | Yes, I do. |
| [Prosecutor]: | Do you recall telling Miss Jones that your attorney— you refer to her in--in the call as Angie--is going to call her the next day? |
| [Petitioner]: | Yes. |
| [Petitioner]: | You told her that your attorney was gonna ask her about the day they were at your mother and father's house, correct? |
| [Petitioner]: | Correct. |
| [Prosecutor]: | Okay. And you were going to--you told her that it was important that she remember to tell your attorney that she remembered the truck pulling in behind you and that you had a conversation with Slug. |
| [Petitioner]: | Correct. |
| [Prosecutor]: | You told her that, quote, "you needed to tell her attorney--" your attorney that Slug told you that he was sorry to, quote, "put you in the middle of this shit," and that you—he knows you had nothing to do with it, but that you—he needed you to lay low for a bit, and that people were gonna be paid off, and I won't get into the entire statement for evidential reasons so that I don't ask inappropriate questions. |

|                 | However, you indicated she's going to talk to you about that conversation, okay, right? |
|-----------------|--------------------------------------------------------------|
| [Petitioner]:   | Correct.                                                     |
| [Prosecutor]:   | Okay. And that's what you told her, is that's all you have to say is what I just said to you, right? |
| [Petitioner]:   | I said--yes.                                                 |
| [Prosecutor]:   | Okay. And then before the conversation ended, you reiterated this to her and told her--told her basically that was important that she repeated exact--that she remember it exactly as you told it to her, right? |
| [Petitioner]:   | Correct.                                                     |
| [Prosecutor]:   | And you've been able to talk to Miss Jones on several occasions in preparation for this trial, right? |
| [Petitioner]:   | No.                                                          |
| [Prosecutor]:   | You've had numerous phone conversations with her since this March 8th date, correct? |
| [Petitioner]:   | Yes.                                                         |

(Trial Tr. IV, ECF No. 11-6, PageID.1264-1266.)   That exchange, apparently, prompted this question from a juror and Petitioner's response:

|               | |
|---------------|--------------------------------------------------------------|
| THE COURT:    | Could you repeat the content of the telephone conversation between you and your wife on November 15? |
| [Petitioner]: | Yes, I can. My Attorney, Angelina (sic) Kuipler (sic) was talking to me, and informed me that she was gonna talk to my wife about a conversation that me and her had.  I called my wife on the phone that Friday and told my wife that my attorney was gonna call her, and I needed her to--I said the--the night--the day that I was at my mother's house when Slug came, when he said that I did not owe him the debt, I need you to tell Angelina that and don't forget anything of that conversation.  The reason why I tell my wife that is because my wife would not talk to my attorney, the police, or anyone from that matter, just without me |

saying baby, you need to talk to these people and tell them the truth.

THE COURT:                    Thank you.

(Trial Tr. V, ECF No. 11-7, PageID.1284.)  Then, the prosecutor offered rebuttal testimony from

Detective Karen Rivard:

[Prosecutor]:                    Okay. And Detective, we heard testimony regarding a phone call between the Defendant and Ashley Jones on November 15th.  Without getting into terms of where individuals were when this phone call was taking place or--or how you came to be familiar with it potentially, were--did you hear the phone call, the conversation that took place between the two?

[Detective Rivard]:              I did hear the conversation, yes.

[Prosecutor]:                    Did you have authority to do so?

[Detective Rivard]:              Yes, I did.

[Prosecutor]:                    Were you violating anyone's rights in any way when—when you listened to that conversation?

[Detective Rivard]:              Absolutely not.

[Prosecutor]:                    Okay. And we heard testimony from the Defendant that in the context of that call was just to relay some information to his attorney on his behalf, more or less.  Was that your understanding of the phone call or what you heard going on in that phone call?

[Detective Rivard]:              No, that was not what I understood was going on in that phone call.

[Prosecutor]:                    What did you hear taking place in that phone call?

[Petitioner's counsel]:          Your Honor, I think that calls for speculation.  That's asking her to decide what the intent of the people engaged in the conversation was when they made the call.

[Prosecutor]:                    Your Honor, I did--didn't ask her—

THE COURT:                    The objection's overruled.

12

| | |
|---|---|
| [Prosecutor]: | Thank you. |
| THE COURT: | The witness was not being asked an opinion. She was being asked a recollection. |
| [Prosecutor]: | Thank you. |
| [Detective Rivard]: | Based on my recollection, it was obvious coaching that was going on during that phone conversation. |
| [Prosecutor]: | Was--let me back you up. Was the Defendant giving Miss Jones information that she was not previously aware of? |
| [Detective Rivard]: | That is what it sounded like to me, yes. |

(Trial Tr. V, ECF No. 11-7, PageID.1338-1339.)  Petitioner contends that Rivard's testimony regarding "obvious coaching" was impermissible opinion testimony regarding the credibility of another witness.

Michigan law holds that a witness may not provide an opinion on the credibility of another witness:

> It is "[t]he Anglo-Saxon tradition of criminal justice . . . [that] makes jurors the judges of the credibility of testimony offered by witnesses." *United States v. Bailey*, 444 U.S. 394, 414 (1980). Because it is the province of the jury to determine whether "a particular witness spoke the truth or fabricated a cock-and-bull story," *id*. at 414-415, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. *People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432 (1985). *See also, People v. Peterson*, 450 Mich. 349, 352, 537 N.W.2d 857 (1995). Such comments have no probative value, *Buckey*, 424 Mich. at 17, 378 N.W.2d 432, because "they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Connecticut v. Taft*, 306 Conn. 749, 764, 51 A.3d 988 (2012) (citation and quotation marks omitted*). See also, People v. Row*, 135 Mich. 505, 507, 98 N.W. 13 (1904) (explaining that opinion testimony regarding a complainant's veracity is not competent evidence). As a result, such statements are considered "superfluous" and are "inadmissible lay witness [ ] opinion on the believability of a [witness's] story" because the jury is "in just as good a position to evaluate the [witness's] testimony." *People v. Smith*, 425 Mich. 98, 109, 113, 387 N.W.2d 814 (1986).

*People v. Musser*, 835 N.W.2d 319, 327 (Mich. 2013) (footnote omitted).  The Michigan Court of

Appeals concluded that Detective Rivard's testimony did not run afoul of that rule:

> "It is generally improper for a witness to comment or provide an opinion on the
> credibility of another witness, because credibility matters are to be determined by
> the jury."  *People v Dobek*, 274 Mich. App. 58, 71; 732 N.W.2d 546 (2007)
> (citations omitted).   Defendant's reliance on this rule, however, is misplaced.
> Rivard was not asked to comment or provide an opinion on the credibility of either
> defendant or Jones.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1516.)  The state court's factual finding regarding the

exchange—that Rivard was not asked to comment on the credibility of another witness—is not

unreasonable.  That factual finding takes the testimony outside the limits of the rule.

The court of appeals concluded that even though it was not opinion testimony

regarding witness credibility, it was still opinion testimony.   Therefore, the court went on to

consider whether the testimony was admissible lay opinion under Michigan Rule of Evidence 701:

> MRE 701, which permits the admission of lay opinion testimony, *People v Fomby*,
> 300 Mich. App. 46, 48; 831 N.W.2d 887 (2013), provides:
>
> > If the witness is not testifying as an expert, the witness' testimony in the
> > form of opinions or inferences is limited to those opinions or inferences
> > which are (a) rationally based on the perception of the witness and (b)
> > helpful to a clear understanding of the witness' testimony or the
> > determination of a fact in issue.
>
> The testimony of Rivard, who did not testify as an expert, that there was "obvious
> coaching" in the telephone conversation met the requirements of MRE 701.  First,
> the testimony was rationally based on the perception of the witness.  Rivard testified
> that she heard the telephone conversation between defendant and Jones.  Second,
> at issue was the credibility of defendant and Jones.   They were the only two
> witnesses who gave testimony supporting the duress defense.  Rivard's testimony
> that there was "obvious coaching" by defendant regarding what Jones should say
> to defense counsel about statements made by "Slug" was helpful to a determination
> of whether defendant and Jones were credible witnesses.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1516.)

The state appellate court's determination that the testimony elicited here was

permissible lay opinion testimony under Michigan Rule of Evidence 701 binds this Court.  The

federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693,700 n.1 (6th Cir. 2018) (same).

Petitioner is only entitled to habeas relief on this claim if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders*, 221 F.3d at 860.  Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province."  *Id*. at 519.  The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury.  The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury.  The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony.  The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence.  The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case.  So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20.  Federal Rule of Evidence expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that opining witnesses could not express opinions on ultimate issues.  Advisory Committee Notes, Fed. R. Evid. 704.  In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.  7 Wigmore §§ 1920, 1921; McCormick § 12.  The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric."  7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

Even if the prohibition of opinion testimony on ultimate issues has softened, that does not leave the permissible scope of opinion testimony without bound.  Federal Rule of Evidence 702—and the parallel Michigan rule—require that the expert opinion testimony help or assist "the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702; Mich. R. Evid. 702.  Expert opinions that "merely tell the jury what result to reach" would, arguably, be inadmissible under Rule 702.  Advisory Committee Notes, Fed. R. Evid. 704.  Federal Rule of Evidence 701—like Michigan Rule of Evidence 701—also requires that lay opinion testimony be "helpful to clearly understanding the witness's testimony or to determining a fact in issue . . . ."  Fed. R. Evid. 701.

This authority suggests that the Supreme Court has not held evidence such as the lay opinion testimony that Petitioner challenges here to be inadmissible.  Moreover, it is noteworthy that the federal authorities cited above considered the issue as a matter of federal ***evidentiary*** law, not federal ***constitutional*** law.  Petitioner has presented no federal authority,

clearly established by the Supreme Court or otherwise, that holds such testimony inadmissible on constitutional grounds.   Accordingly, Petitioner has failed to show that the state courts' determinations regarding the admissibility of this evidence is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief on this claim.

### IV.     Improper exclusion of evidence (habeas issues V and VII)

Petitioner also complains that the trial court improperly excluded two categories of evidence: testimony from Officer Jason Gates and testimony from Petitioner's treating health professional Tara Adams.  Petitioner contends the excluded testimony would have supported his duress defense.  Officer Jason Gates testified first as part of the prosecution's case.  Petitioner's significant other, Ashley Jones, had reported that she had been threatened by a man, a threat that related to Petitioner.  Officer Gates investigated that threat.  In the process, he spoke with Petitioner and Ms. Jones.   On cross-examination, Petitioner's counsel attempted to explore with Officer Gates what Petitioner and Ms. Jones had told him.  The prosecutor objected on grounds of hearsay. The trial court excluded the testimony.

After Ms. Jones and then Petitioner testified regarding their interviews with Officer Gates, the prosecutor called Officer Gates in rebuttal.   At that time, both counsels elicited testimony regarding the interviews without objection.  Thus, the testimony that was not admitted during the prosecutor's initial proofs was admitted later in the trial.

Additionally, Petitioner wanted to elicit testimony from Tara Adams, his treating mental health professional at the time of the crime.  After hearing an offer of proof outside the presence of the jury, the court concluded that Ms. Adams could testify regarding a session on March 6, two days before the robbery, regarding Petitioner's reports of his present sense impressions at that time.  Ms. Adams testified that Petitioner was fearful and worried he would not

live long.  The court ruled that testimony regarding counseling sessions that were more remote in time from the crime were not relevant as present sense impressions and did not fit any other hearsay exception.

Petitioner contends the trial court's rulings regarding the inadmissibility of this testimony was in error.  For the reasons set forth above, however, the state court's determinations under state law regarding the inadmissibility of this evidence bind this Court.  Nonetheless, Petitioner's claim does have a constitutional dimension.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).  The Sixth Circuit has explained:

> [A] "meaningful opportunity" is not "every opportunity," and relevant evidence is frequently excluded from trial.  Trial judges must make "dozens, sometimes hundreds" of evidentiary decisions throughout the course of a typical case, and rarely are these of constitutional significance: "the Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Crane*, 476 U.S. at 689-90, 106 S. Ct. 2142 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)) (alterations and omissions in original).  But while the Constitution leaves much in the hands of the trial judge, "an essential component of procedural fairness is an opportunity to be heard."  *Id.* at 690, 106 S. Ct. 2142.

*Gagne v. Booker*, 596 F.3d 335, 340-41 (6th Cir. 2010).  A proper inquiry into the constitutionality of a trial court's decision to exclude evidence begins with considering the relevancy and cumulative nature of the excluded evidence, and the extent to which it was "central" or "indispensable" to the defense.  *Id*. at 341.  Against this, courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based.  *Id.*

The Court excluded much of Ms. Adam's anticipated testimony, but the exclusion did not interfere with Petitioner's right to present his duress defense.  Petitioner testified regarding

18

his fear at various times before, during, and after the crime as well as his communication of that fear to Ms. Adams.  Although the Court excluded Officer Gates's testimony regarding Ms. Jones and Petitioner's statements during the interviews, both of the interviewees testified.  Moreover, with that foundation laid, when Officer Gates was called for rebuttal, the questioning regarding the interviews was not restricted.  In neither circumstance was Petitioner denied the opportunity to present his defense.  Accordingly, Petitioner has failed to show that the state courts' determinations excluding the evidence was contrary to, or an unreasonable application of clearly established federal law.

## V.    Confrontation (habeas issue IV)

Plaintiff argues that he was denied his rights under the Confrontation Clause because victim Scott Smith did not testify at trial.  Petitioner was, nonetheless, convicted of robbing Mr. Smith on the strength of the testimony of the Tuckers and Ms. Wallace.  The Michigan Court of Appeals flatly rejected Petitioner's Confrontation Clause argument:

> Implicit in Confrontation Clause jurisprudence is that a witness must put forth some testimony before a defendant's right of confrontation comes into play.  *People v Gearns*, 457 Mich. 170, 186-187; 577 N.W.2d 422 (1998), overruled in part on other grounds by *People v Lukity*, 460 Mich. 484; 596 N.W.2d 607 (1999).  Smith did not testify at trial, nor were any out-of-court statements by him admitted into evidence.  See *Henry (After Remand)*, 305 Mich. App. at 153.  Accordingly, because Smith did not give any testimony, defendant was not denied his right of confrontation when Smith did not testify at trial.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1519.)  The state court's determination is entirely consistent with clearly established federal law.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against

19

a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Confrontation Clause is not implicated with respect to Scott Smith, because he never "testified" at trial, either directly or through the introduction of testimonial out-of-court statements, *Crawford*, 541 U.S. at 68-69.  The clause applies only to witnesses—those who provide testimony.  A criminal defendant has no right to confront a person who provides no evidence at trial.  *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him.  This contention we consider absolutely devoid of merit."); *see also McCray v. Illinois*, 386 U.S. 300, 313-314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses against him . . . [it] does not, however, require the government to call every witness competent to testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial."); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

Petitioner has failed to show that the state court's rejection of his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

20

## VI.    Photo lineup identification (habeas issue VI)

Petitioner identifies flaws in the photo lineup from which Christopher Tucker identified Petitioner as the armed robber and, for that reason, contends the lineup should not have been introduced into evidence.  Due process provides a "check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012).  The principle of due process "prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification."  *United States v. Peterson*, 411 F. App'x 857, 864 (6th Cir. 2011) (citing *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000)).   In determining whether an unacceptable risk of misidentification with regard to a photo lineup exists, courts employ a two-step analysis.  *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967), and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)).  The first step requires a determination as to whether the identification was "unnecessarily suggestive."  *Id.*  To make this determination, "the court may consider 'the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves.'"  *United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (citing *United States v. Sanchez*, 24 F.3d 1259 (10th Cir. 1994)); *see also United States v. Wade*, 388 U.S. 218 (1967).  The second step of the inquiry requires consideration of a number of factors, including

> 1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.

*McComb*, 249 F. App'x at 437 (citing *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004)); *see also Haliym*, 492 F.3d at 704 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), and *Biggers*,

21

409 U.S. at 199-200.  If "the first step of the requisite analysis ends in the government's favor, [the court] need not address" the second step of the inquiry.  *United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004).

Petitioner makes no serious attempt to argue that the six-photo photographic lineup was unduly suggestive.  He suggests that the officer who presented the lineup to Mr. Tucker pointed to Petitioner and asked if Petitioner was the robber.  There is no record support for Petitioner's suggestion.  Petitioner also claims that the other persons in the photo lineup were obviously different by size, hairstyle, or age.  Petitioner's counsel explored those differences during cross-examination of Detective Rivard.

The Michigan Court of Appeals did not explore Petitioner's challenge to the array in detail because the court concluded any possible error did not affect the outcome:

> [E]ven if there were errors, the errors were harmless.  Defendant presented a duress defense, which required him to (and he did several times) admit that he committed the charged crimes.  *See People v Chapo*, 283 Mich. App. 360, 371; 770 N.W.2d 68 (2009).  Because defendant admitted that he committed the armed robberies, any plain error that may have occurred when Christopher and Rivard testified about Christopher's out-of-court identification did not affect the outcome of the proceedings.  *Carines*, 460 Mich. at 763.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1520.)  The determination that there is no plain error because any error did not affect the outcome is the equivalent of a determination that the error was harmless.[1]

---

[1] In *United States v. Olano*, 507 U.S. 725, 734-35 (1993), the Supreme Court explained that determining the presence of "plain error" or "harmless error" involves the same analysis: does the error affect substantial rights.  When the Supreme Court held that habeas petitioners are not entitled to relief based on "harmless error," it noted that the existing body of federal case law would apply to the standard.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Thus, the habeas "harmless error" analysis is the same as the *Olano* analysis.  *Manning v. Huffman*, 269 F.3d 720, 726 n.3 (6th Cir. 2001).  The plain error test applied by the state court is also the same as the *Olano* analysis.  *See People v. Carines*, 597 N.W.2d 130 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123 (Mich. 1994).  Thus, the absence of prejudice that prompted the state appellate court's conclusion with respect to plain error suggests the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict[,]" *Brecht*, 507 U.S. at 623, and, therefore, was harmless.

As explained above, this Court must defer to the appellate court's determination that any error was harmless.  "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable.  *O'Neal*, 933 F.3d at 624.  The appellate court concluded that any flaw in the victim's identification of Petitioner as the perpetrator is harmless because Petitioner identified himself as the perpetrator as well.  That conclusion is eminently reasonable.  Petitioner, therefore, has failed to show that the state appellate court's determination that any error was harmless is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

### VII.    *Miranda* **(habeas issue VIII)**

Petitioner claims that his statements to Officer Gates should have been suppressed because Gates violated *Miranda v. Arizona*, 384 U.S. 436 (1966) when he interviewed Petitioner at the county jail.  The Michigan Court of Appeals rejected the claim:

> Defendant argues that Gates violated his *Miranda* rights when Gates interviewed him on May 26, 2013.  Because this issue was never raised before the trial court, it is unpreserved, *Metamora Water Serv, Inc*, 276 Mich. App. at 382, and reviewed for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

> In *Miranda v Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that an accused, pursuant to the Fifth Amendment right against self-incrimination, must be given a series of warnings before being subjected to custodial interrogation. *People v Elliott*, 494 Mich. 292, 301; 833 N.W.2d 284 (2013).  Defendant has abandoned the issue whether his *Miranda* rights were violated.  See *Kelly*, 231 Mich. App. at 640-641.  The only legal authority that defendant cites in support of his claim are three cases that were decided by the United States Supreme Court before *Miranda* was decided in 1966.

> Regardless, an accused is not entitled to *Miranda* warnings unless he is subject to custodial interrogation.  *Elliott*, 494 Mich. at 302.  Although defendant was an inmate at the county jail when he was interviewed by Gates, an accused's imprisonment, by itself, is not sufficient to constitute custody for Miranda purposes. *Howes v Fields*, 565 U.S. ___, ___; 132 S. Ct. 1181, 1190 (2012).  "When a prisoner is questioned, the determination should focus on all the features of the interrogation. These include the language that is used in summoning the prisoner to the interview

and the manner in which the interrogation is conducted." Id. at 1192 (citation omitted). Because the record is silent regarding many of the features of Gates's interview of defendant, including where the interview took place at the county jail, how long the interview lasted, and whether Gates told defendant that he was free to leave, the record prohibits us from reaching a conclusion that defendant was in custody for purposes of *Miranda* when Gates interviewed him. Thus, there was no plain error in the admission of defendant's statements to Gates. *Carines*, 460 Mich. at 763.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1520) (footnote omitted).

The court of appeals expressly relied upon clearly established law when resolving Petitioner's *Miranda* challenge. Petitioner fails to explain how the appellate court's determinations were contrary to, or an unreasonable application of, clearly established federal law. Petitioner instead starts from the position that the interview was custodial. The record does not bear out that proposition.

Officer Gates testified that he was investigating a threat made against Petitioner's wife. He went to the jail to interview Petitioner as a witness with respect to that matter, neither knowing nor suspecting that there was any relationship between the threat and the armed robbery. When Petitioner volunteered that the debt that prompted the threat had also prompted the robberies, Gates simply stopped questioning him. (Trial Tr. V, ECF No. 11-7, PageID.1324-1326.)[2]

Even if circumstances warranted suppression of the interview, Petitioner had no reason to seek that relief. The facts that are brought to light by this interview are the heart and soul of Petitioner's duress claim. Because Petitioner owed others money, the others threatened his family to force Petitioner to commit the armed robbery. Indeed, that is why Petitioner, in his internally inconsistent *pro per* Standard 4 appellate brief argues on the one hand that Gates's testimony regarding the interview should be suppressed because it violates Petitioner's *Miranda*

---

[2] Officer Gates' description of the interview varies from Petitioner's account. Officer Gates testified that Petitioner volunteered information regarding the robberies. Petitioner claims Officer Gates specifically asked Petitioner about the robberies.

rights, yet argues on the other hand that Petitioner's counsel should have been permitted to explore with Gates the circumstances that put Petitioner under duress that Gates learned about from the interview.[3]  Essentially, Petitioner complains that the trial court excluded the evidence and then he complains that the trial court admitted it.

Petitioner has failed to show that the Michigan Court of Appeals' determination regarding the *Miranda* issue is contrary to, or an unreasonable application of, clearly established federal law.  Thus, he is not entitled to habeas relief.  Moreover, Petitioner's attempt to suppress Officer Gates report of the interview runs directly counter to Petitioner's entire trial strategy.

### VIII.   Jury venire (habeas issue IX)

Petitioner next raises a very terse challenge to his jury venire:

> [O]nly 2 blacks in Kalamazoo County were pulled in the jury pool.  Judge Johnson dismissed one of the black jurors and only left one black juror out of 2. . . . Mr. Curry was forced to settle for a majority white jury.

(Pet'r's Std. 4 Br., ECF No. 11-9, PageID.1604.)  Petitioner touches upon a legitimate Sixth Amendment issue.  In *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Supreme Court held that "the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from *venires* representative of the community . . . ."  *Id.* at 537.  In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate three elements: (1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.  *Duren v. Missouri*, 439

---

[3] As explained fully above, Petitioner's counsel was permitted to explore those circumstances through Ms. Jones, Petitioner, and, during the prosecutor's rebuttal case, Officer Gates.

U.S. 357, 364 (1979).  When potential jurors are systematically excluded from the jury pool on the basis of race, structural error occurs.  *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986).

The Michigan Court of Appeals rejected Petitioner's claim:

> Although African-Americans are considered a distinctive group in the community, *People v Williams*, 241 Mich. App. 519, 526; 616 N.W.2d 710 (2000), there is no evidence in the record regarding jury venires in general in Kalamazoo County. "Merely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case." *People v Howard*, 226 Mich. App. 528, 533; 575 N.W.2d 16 (1997) (citation omitted).    There is likewise no evidence in the record that the alleged underrepresentation was due to systematic exclusion, i.e., "an exclusion resulting from some circumstances inherent in the particular jury selection process used." *Id*. (citations omitted).  "It is well settled that systematic exclusion cannot be shown by one or two incidents of a particular venire being disproportionate."  *Williams*, 241 Mich. App. at 526 (citation omitted).  Accordingly, defendant's argument is without merit.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1521.)  Although the appellate court relied on state authority, that authority, in turn, relied upon *Duren*.  *See People v. Howard*, 575 N.W.2d 16, 21 (Mich. Ct. App. 1997); *People v. Williams*, 616 N.W. 2d 710, 714 (Mich. Ct. App. 2000).

Petitioner's two-sentence presentation of this issue touches upon the first *Duren* element; however, he has failed to address either the second or third elements.  Therefore, he has certainly failed to demonstrate that the Michigan Court of Appeals' analysis—which is founded upon the second and third *Duren* elements—is contrary to, or an unreasonable application of *Duren*, the clearly established federal law on this issue.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IX.    Ineffective assistance of counsel (habeas issue III)

Finally, Petitioner contends that his present confinement is unconstitutional because his counsel rendered ineffective assistance.  Specifically, Petitioner complains that his counsel failed to follow the procedural steps necessary to qualify his treating counselor as an expert witness under Federal Rule of Civil Procedure 26; failed to move to suppress Officer Gates

testimony; failed to subpoena or otherwise obtain testimony from multiple witnesses to corroborate Petitioner's duress defense; failed to get audio of Petitioner's 911 call in the days preceding the armed robbery; and failed to get Mr. Curry's phone records so Petitioner's text messages could corroborate his duress defense.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*,

563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances,

the question before the habeas court is "whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir.

2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

### A.      Failure to qualify the counselor as an expert

The Michigan Court of Appeals gave short shrift to Petitioner's claim that his

attorney had failed to comply with the Federal Rules of Civil Procedure regarding expert

qualification:

> Defendant claims that defense counsel was ineffective for failing to file the
> paperwork required by FRCP 26(a)(2)(b) regarding Tera Adams, his counselor.
> FRCP 26 has no application to the present case.  The Federal Rules of Civil
> Procedure only apply to proceedings in the federal district courts.  FRCP 1.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1518.)  The appellate court's determination of the

claim is, of course, correct.  But, even if Petitioner raised the claim under the parallel Michigan

procedural rule, it would fare no better because Ms. Adams' expert opinion was not required.

The judge restricted Ms. Adams' testimony; but, he did not restrict Ms. Adams'

testimony because counsel had failed to qualify Ms. Adams as an expert.  Counsel did not offer

the testimony of Ms. Adams to obtain any expert opinion.  (Trial Tr. IV, ECF No. 11-6,

PageID.1042-1043.)  She simply wanted Ms. Adams to corroborate Petitioner's statements to her

regarding his thoughts and feelings of fear—the same fear that compelled him, according to his

duress defense, to commit the crimes.  (*Id*.)  The trial judge restricted Ms. Adams' testimony

because it was intended to elicit what Petitioner told Ms. Adams; thus, it was hearsay.  (*Id*.,

PageID.1044.)  The court concluded that it might be admissible as a statement of Petitioner's then

existing mental, emotional, or physical condition, under Mich. Rule Evid. 803(3), but that such statements would only be relevant if they were close in time to March 8 when he committed the armed robberies.  (*Id.*, PageID.1044-1046.)  Petitioner's counsel was permitted to explore with Ms. Adams what she observed or learned from Petitioner during the relevant counseling session, to corroborate Petitioner's testimony regarding his fear. Ms. Adams' "expert" opinion was simply irrelevant to Petitioner's duress defense and Petitioner does not offer any explanation of what Ms. Adams might have opined about to advance Petitioner's defense.  In short, Petitioner has failed to demonstrate how counsel's failure to qualify Ms. Adams as an expert is professionally unreasonable under the circumstances and has similarly failed to demonstrate how that failure prejudiced him.  Accordingly, Petitioner is not entitled to habeas relief on his "expert qualification" ineffective assistance claim.

### B.    Failure to suppress Officer Gates' testimony

Petitioner claims counsel should have moved to suppress Officer Gates' testimony. Petitioner never explains why counsel should have moved to suppress the testimony.  For that reason alone, the court of appeals rejected the claim.  (Mich. Ct. App. Op., ECF No. 11-9, PageID.1517.)   Presumably, however, Petitioner contends the testimony should have been suppressed because Petitioner believes his interview with Officer Gates violated Petitioner's rights under *Miranda*.  For the reasons set forth above, however, Petitioner's *Miranda* claim has no merit. Thus, if counsel had moved to suppress the testimony, the motion would have been denied because it would have lacked merit.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C.      Failure to subpoena or obtain testimony from witnesses

Petitioner complains that his counsel failed to subpoena "Ms. Jones" from Grand Rapids, and Heather Sadler.   Petitioner contends his counsel properly subpoenaed witness Shamirra Jordan, but then failed to compel her to testify before she moved out of state.   Petitioner also claims that his counsel failed to contact the manager for Petitioner's apartment complex who could have corroborated that Petitioner left a trailer with all his belonging at the complex for almost two months after he moved out without notice because of threats to his family.

With regard to prospective witnesses Sadler and Jordan, the Michigan Court of Appeals noted that the record supported a finding that Petitioner's counsel had issued and served subpoenas on them.   Although the record is not as clear with respect to witness Erin Jones, Petitioner has not shown that his counsel failed to serve her with a subpoena.   Immediately before trial, Petitioner's counsel noted that she had difficulty serving Sadler and Jones; however, as the time for Petitioner to put on his case drew near, Petitioner's counsel noted that she had four witnesses under subpoena and there is nothing in the record to suggest she was unable to serve Ms. Jones.   The court of appeals' factual determinations regarding counsel's service of subpoenas are reasonable on the record and they foreclose Petitioner's claim that his counsel rendered ineffective assistance because she failed to serve the witnesses with subpoenas.

The court of appeals also rejected Petitioner's contention that his counsel was ineffective for failing to call the witnesses.   With respect to witness Jordan, Petitioner's counsel was ready to call the witness and, indeed, to accommodate the witness's schedule, to call her out of order.   However, when the progress of the trial finally permitted counsel to specifically identify the time for Jordan to testify, Jordan refused to stay and do so.   She left.

The record indicates that counsel consulted with Petitioner regarding the advisability of seeking a bench warrant to compel Jordan's appearance.  Counsel reported to the court that Petitioner did not want to seek a bench warrant because Jordan was a relative.  The court of appeals posited that counsel may have also chosen to forego seeking a bench warrant because forcing Jordan to appear when she clearly did not want to do so might make her hostile or uncooperative.  Under those circumstances, the appellate court determined that Petitioner had failed to carry his burden to show that counsel's actions were professionally unreasonable.  Petitioner does not address the appellate court's determination; therefore, he has failed to demonstrate that the determination is unreasonable.

With respect to the other witnesses—Sadler, Jones, and the apartment complex manager—the Michigan Court of Appeals noted that there is nothing in the record regarding the nature of their expected testimony or their willingness to testify on Petitioner's behalf.  Absent record support for Petitioner's contention that the witnesses were willing to testify and that their testimony was favorable to Petitioner, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue their testimony or that it made any difference in the result.  The state court's resolution is neither contrary to nor an unreasonable application of clearly established federal law.

"A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[4]  Petitioner offers nothing to support his

---

[4] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding his

speculation that the testimony at issue would have been favorable to him. Accordingly, Petitioner has failed to establish entitlement to habeas relief grounded on counsel's failure to call witnesses.

### D.    Phone records and the 911 call

Petitioner next claims that his counsel was ineffective for failing to develop the duress defense through Petitioner's text messages and the 911 call he purportedly made. The court of appeals concluded it was impossible to evaluate Petitioner's claim because there was nothing in the record regarding the import of the evidence:

> The same holds true for defendant's argument that defense counsel was ineffective for failing "to get the 911 recording of the defendant on the days before March 8." The argument indicates that defendant called 911 sometime before March 8, 2013, but there are no facts on the record supporting this indication. *Hoag*, 460 Mich. at 6.
>
> Defendant also asserts that defense counsel failed to send his telephone records to a laboratory "so the text messages could be shown as to [defendant's] truthfulness." Once again, however, there are no facts on the record regarding what text messages were on defendant's cellular telephone. Accordingly, defendant cannot show that, but for counsel's alleged deficient performance, there is a reasonable probability that the result of his trial would have been different. *Uphaus (On Remand)*, 278 Mich. App. at 185. Defendant was not denied effective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 11-9, PageID.1518.) The appellate court's determination that Petitioner had failed to carry his burden is entirely reasonable on the record and consistent with *Strickland*, the clearly established federal law regarding ineffective assistance of counsel.

---

mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

Moreover, based on Petitioner's arguments, it appears Petitioner's text messages and the 911 call would have simply reiterated Petitioner's contention that he was in fear because former associates claimed he owed them money. The evidence would have been entirely cumulative of the testimony of Petitioner, his wife, and his counselor and, to the extent the messages and 911 call occurred more than a day or two before or at any time after the robberies, would have been the sort of irrelevant hearsay that the court excluded when Petitioner's counselor testified. Because the state court's rejection of Petitioner's claim is reasonable and consistent with clearly established federal law, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Recommended Disposition</u>

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  November 25, 2019                    /s/ Ray Kent
                                             United States Magistrate Judge



### <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).